UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

RASHEEN DAVIS,

                Plaintiff,         **MEMORANDUM AND ORDER**

      - against -           10 Civ. 00308 (NRB)

MS. TORRES, MR. HARRIS,
MS.FREEMAN, and MR. PRESTON

                Defendants.
----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


      <u>Pro</u> <u>se</u> plaintiff Rasheen Davis ("plaintiff" or "Davis"),
currently an inmate at Upstate Correctional Facility, brings
this action pursuant to 42 U.S.C. § 1983 against Officers
Torres, Harris, Freeman, and Preston (collectively
"defendants"), alleging violations of his constitutional rights
while he was incarcerated at the Sing Sing Correctional Facility
("Sing Sing"). The defendants have moved to dismiss the
complaint on the grounds that plaintiff failed to exhaust his
administrative remedies prior to bringing this case.[1]  For the
reasons set forth below, the defendants' motion to dismiss is
converted to a motion for summary judgment, and it is granted.

---

[1] Plaintiff originally also named an inmate, Rasheed Helmet, as a defendant.
It appears that Helmet was not served with the complaint and, in any event,
he was terminated as a defendant in this case on May 21, 2010.

## BACKGROUND

### I.  Allegations in the Complaint

In his Third Amended Complaint ("Compl."), plaintiff alleges that on April 7, 2009, while walking to his cell in Sing Sing, Officer Torres told him that he "still ha[dn't] learn[e]d his fucking lesson" and then allowed another inmate, Rasheed Helmet, into his cell.  Plaintiff alleges that Helmet "put his hands on [plaintiff,]" and, as a result, plaintiff suffered two black eyes, was "red inside of [his] eye," and had "knots" in his forehead.  Compl. at ¶ II.D.  Plaintiff claims that he was not provided any medical treatment for his injuries (id. at ¶ III), and that the defendants violated his constitutional rights by denying him medical attention and failing to protect him from another inmate.

### II.  Procedural History

Plaintiff filed his original complaint in this case on January 14, 2010.  He then filed an amended complaint on February 8, 2010, a second amended complaint on March 5, 2010, and a third amended complaint on May 21, 2010.  Defendants filed their motion to dismiss on September 10, 2010.

We note that plaintiff has submitted numerous letters, affidavits, and other statements to this Court.  As discussed further below, we have considered these submissions as part of the record.

**III. Defendants' Arguments**

Defendants argue that plaintiff's complaint must be dismissed because "the complaint contains no allegations that plaintiff exhausted his administrative remedies under the requirements of the PLRA." Mem. of Law in Support of Defs.' Mot. to Dismiss ("Defs.' Mem."), at 6. In addition, defendants have submitted three affidavits in support of their motion.

The first affidavit is from Frank Robinson, Sing Sing's Inmate Grievance Program ("IGP") supervisor. Robinson states that he is responsible for receiving and maintaining grievances filed by inmates at Sing Sing, and that he has access to a grievance log which contains a record of all grievances filed. Declaration of Frank Robinson ("Robinson Decl.") at ¶¶ 1-2. Robinson searched for grievances filed at Sing Sing by plaintiff and found none. Id. at ¶ 3.

The second affidavit is from Mark James, Attica Correctional Facility's IGP supervisor.[2] Declaration of Mark James ("James Decl."). In his affidavit, James states that he searched for grievances filed at Attica by plaintiff and found "no grievances regarding any incident that allegedly occurred during the time period from April 1, 2009 to May 31, 2009." Id. at ¶ 5.

---

[2] Plaintiff was incarcerated at Attica beginning on July 10, 2009. See James Decl. at ¶ 3.

The third affidavit is from Jeffrey Hale, the Assistant Director of the IGP Program at DOCS.  Declaration of Jeffrey Hale ("Hale Decl.").  Hale is the custodian of the records maintained by the Central Office Review Committee ("CORC"), the institution that renders final administrative decisions under the IGP.  Id. at ¶ 1.  In his affidavit, Hale states that CORC maintains files of grievance appeals and that its "computer database contains records of all appeals received from the facility IGP Offices that were heard and decided by CORC since 1990."  Id. at ¶ 2.  Hale conducted a search of DOCS computer records relating to appeals to CORC and uncovered one appeal filed by plaintiff involving an unrelated incident that occurred on June 9, 2010.  Id. at ¶ 5.  Hale found no record of any appeal to CORC relating to the conduct at issue in this case. See id. at ¶ 6.

## DISCUSSION

### I.   Legal Standard

#### A. Motion to Dismiss

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor.  Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A complaint must include "enough facts to state a claim for relief

that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." Id. This pleading standard applies in "all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009).

Where, as here, a complaint is filed by a pro se plaintiff, the complaint should be reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). In other words, courts must interpret such pleadings "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Nevertheless, pro se plaintiffs remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal. See Schwamborn v. County of Nassau, 348 F. App'x 634, 635 (2d Cir. 2009).

## B. Converting the Motion to a Motion for Summary Judgment

When matters outside the pleadings are presented to and not excluded by the Court on a motion to dismiss under Rule 12(b)(6), the Court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Court must provide all parties a "reasonable opportunity to present all the material that is pertinent to the motion." Id. When converting

a motion to dismiss to a motion for summary judgment, "care should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law." Sahu v. Union Carbide Corp., 548 F.3d 59, 69-70 (2d Cir. 2008) (quoting First Financial Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 115 (2d Cir. 1999)).

Here, as noted above, the defendants have submitted three affidavits and plaintiff has submitted a variety of letters, affidavits and other documents. Thus, as the Court will consider the additional submissions, we will consider this motion as one for summary judgment under Rule 56, rather than a motion to dismiss under Rule 12(b)(6).[3]

## II. Analysis

### A. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all administrative remedies prior to commencing an action in federal court concerning prison

---

[3] Defendants placed plaintiff on notice that their motion to dismiss could be converted to a motion for summary judgment by filing a notice pursuant to S.D.N.Y. Local Rule 12.1 on September 10, 2010 (Dkt. No. 22) ("You are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure."). Plaintiff made numerous additional submissions in response to defendants' motion.

conditions.  See 42 U.S.C. § 1997(e)(2006) ("No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); see also Porter v. Nussle, 524 U.S. 516, 516 (2002).  An inmate's failure to exhaust is an absolute bar to an action in federal court.  Neal v. Qoord, 267 F.3d 11, 122 (2d Cir. 2001). Exhaustion "is a matter of judicial administration in the sense that '[u]ntil the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to [do so].'" Messa v. Goord, ---F.3d---, 2011 WL 3086827, at *2 (2d Cir. July 26, 2011)(quoting Pavey v. Conley, 544 F.3d 739, 741 (7th Cir. 2008)).

Sufficient exhaustion of administrative remedies generally requires full compliance with a prison program's procedural rules.  See Woodford v. Ngo, 548 U.S. 81, 90-92 (2006).  In this case, plaintiff was required to comply with the New York State Department of Correctional Services ("DOCS") three-step Inmate Grievance Program prior to filing his complaint.  Verley v. Wright, No. 02 Civ 1182 (PKC), 2007 WL 2822199, at *5-6 (S.D.N.Y. Sept. 27, 2007).  This process requires an aggrieved inmate to: (1) file a grievance with the Inmate Grievance Resolution Committee ("IGRC"); (2) appeal, if he disagrees with

the IGRC's decision, to the superintendent of the facility; and (3) seek review of the superintendent's decision, if it is adverse, with the Central Office Review Committee. 7 N.Y.C.R.R. § 701.5; see also Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009). An inmate must file his complaint within twenty-one days of the alleged grievance. 7 N.Y.C.R.R. § 701.5(a)(1). An appeal to the superintendent must be submitted within seven days after receipt of the IGRC's written response to the grievance (id. at § 701.5(c)(1)), and an appeal to CORC must be submitted within seven days after receipt of the superintendent's written response to the grievance. Id. at § 701.5(c)(1)). Furthermore, absent any extension of time limits, matters not decided within the time limits "may be appealed to the next step." Id. at § 701.6(g)(2).

There are three ways in which a prisoner may overcome the exhaustion requirement of the PLRA: (1) he can show that administrative remedies were not actually "available" to him, (2) he can show that the defendants should be estopped from raising the plaintiff's failure to exhaust as an affirmative defense, or (3) he can show that special circumstances exist that excuse the plaintiff's non-compliance with official

procedural requirements.  <u>Giano v. Goord</u>, 380 F.3d 670, 677 (2d Cir. 2004).[4]

**B. Plaintiff's Attempts to File Grievances**

As a preliminary matter, we note that in his complaint plaintiff states that he <u>did</u> file a grievance, and also that he <u>did not</u> file a grievance.[5]  When asked by the <u>Pro Se</u> Office's Amended Complaint form what the result was of his grievance, plaintiff responded that he does "not know at all."  Compl. at ¶ IV(E)(2).  Furthermore, when asked what steps, if any, he took to appeal the decision on his grievance and to describe all efforts to appeal to the highest level of the grievance process, plaintiff did not respond.

Even if we disregard plaintiff's statements that he did not file a grievance, either at Sing Sing or at another facility, nowhere in plaintiff's complaint does he state that he appealed to CORC, as is required under the IGP procedures.  <u>See, e.g.</u>, <u>Smith v. Knee</u>, 08 Civ. 11079 (SAS), 2011 WL 1483924, at * 3 (S.D.N.Y. Apr. 18, 2011) ("[A]n inmate's claim is not exhausted until he appeals to CORC and receives a final decision regarding

---

[4] We note that the Second Circuit has recently held that there is no right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA.  <u>Messa</u>, 2011 WL 3086827, at *2.

[5] When asked by the <u>Pro Se</u> Office's Amended Complaint form whether he filed a grievance in the facility where his claim arose (<u>i.e.</u> Sing Sing), plaintiff responded that he did not.  When asked whether he filed a grievance about the events described in the complaint at any other correctional facility, plaintiff again responded that he did not.  But, when asked where he filed a grievance (if he did file a grievance), plaintiff responded that he filed a grievance at Sing Sing.

his grievance."). Instead, plaintiff alleges that "a grievance was filed in [sic] I have spoken to officer Mr. Harris about the incident . . . [and] Officer Harris . . . had me speak to [other sergeants] as well." Compl. at ¶ IV(F)(2). Plaintiff further alleges that he "put so many [grievances] inside of the I.G.R.C. Box," but that he never received an answer, and that he "wrote on a regular piece of paper [and] sent it to the superintendants in the commissioner's office." Id. at ¶ IV(G).

As a number of courts have held, such letters and verbal communications are insufficient to satisfy the exhaustion requirement under the PLRA. See, e.g., Simon v. Campos, 09 Civ. 6231 (PKC), 2010 WL 1946871, at *6 (S.D.N.Y. May 10, 2010) (letter to facility superintendent and oral complaints insufficient to satisfy exhaustion requirement); Magassouba v. Cross, 08 Civ. 4560 (RJH)(HBP), 2010 WL 1047662, at *8 (S.D.N.Y. Mar. 1, 2010) (same); Harrison v. Goord, 2009 WL 1605770, at *8 (S.D.N.Y. June 9, 2009) (verbal grievances and letters to the facility superintendent, commissioner of DOCS, and others insufficient to satisfy exhaustion requirement); Lashley v. Artuz, 01 Civ. 11542 (SAS) 2004 WL 1192090, at *3 (S.D.N.Y. May 27, 2004) (noting that "[c]ourts have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements") (internal quotation marks omitted).

While plaintiff's complaint fails to allege that he satisfied the exhaustion requirement (and, in places, appears to concede that he has not) plaintiff has, as noted above, made numerous additional submissions to this Court concerning his attempts at filing grievances.  Although many of plaintiff's submissions are difficult to follow, plaintiff has submitted a number of letters that were either sent from plaintiff to various prison officials, or sent from prison officials to plaintiff.  Some of these letters were dated after plaintiff filed his complaint in this action, and thus are obviously insufficient to satisfy the required pre-complaint exhaustion.[6]  The pre-complaint letters are:

- A July 23, 2009 letter from Cynthia R. Diaz at the State Commission of Correction responding to a letter from plaintiff and stating that "the issues you raised may be addressed through the Inmate Grievance Program."

- A November 16, 2009 letter from Erin M. Purdy, a Correctional Facility Specialist, responding to a letter from plaintiff to the State Commission of Correction.  In the letter, Purdy informed plaintiff that his correspondence was being forwarded to his facility administration for review.  It is unclear what plaintiff's correspondence addressed.

- A November 30, 2009 letter from Deputy Commission Lucien J. Leclaire, Jr. responding to a letter from plaintiff to DOCS Commissioner Brian Fischer concerning access to meals and law library services at Attica.

---

[6] See, e.g., Smith, 2011 WL 1483924, at *3 ("Because the plain language of section 1997e(a) states 'no action shall be brought,' an inmate must have exhausted his claims at the time the initial complaint was filed as "[s]ubsequent exhaustion after suit is filed ... is insufficient."); Burgos v. Craig, 307 Fed.Appx. 469, 470 (2d Cir. 2008) ("[Exhaustion] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient.").

- A December 11, 2009 letter from Erin Purdy responding to a letter from plaintiff to the State Commission of Correction addressing allegations of staff misconduct and harassment.

- A January 13, 2010 letter from Karen Bellamy, Director of the Inmate Grievance Program, responding to a December 22, 2009 letter apparently from plaintiff to Commissioner Fischer, which addressed plaintiff's (unidentified) grievances.

None of these letters indicate that plaintiff satisfied any of the three steps of the IGP.  Rather, as stated above, letters addressed to prison officials and the Commissioner of DOCS are insufficient to "compl[y] with [DOCS'] deadlines and other critical procedural rules," as is necessary for "proper exhaustion" under the PLRA.  Woodford, 548 U.S. at 93. See also Scott v. Gardner, 287 F.Supp.2d 477, 488 (S.D.N.Y. 2003) ("Letters of complaint, regardless of the addressee, are not part of the grievance process and do not satisfy the exhaustion requirement.").[7]

### C. Excuse

Since plaintiff did not exhaust his remedies prior to bringing this suit, we now consider whether he may overcome the exhaustion requirement of the PLRA by demonstrating: (1) that administrative remedies were not actually "available" to him, (2) that the defendants should be estopped from raising his

---

[7] In addition, we note that the existence of these letters undermines plaintiff's theory that there is a systemic plot to intercept his mail and thwart his grievances.

failure to exhaust as an affirmative defense, or (3) that special circumstances exist that excuse his non-compliance with official procedural requirements. Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004).

### 1. Availability

The Second Circuit has stated that the "test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." Hemphill v. Humphrey, 380 F.3d 680, 688 (2d Cir. 2004) (internal quotation marks and citation omitted). "[T]hreats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." Id.

Here, plaintiff appears to argue that administrative remedies were unavailable to him because he was retaliated against for filing grievances. See Affidavit of Rasheen Davis (Nov. 4, 2010)(alleging that he was "be[aten] up" for filing grievances.) Plaintiff's contention that he continuously filed grievances[8] and sent letters to prison officials belies his claim

---

[8] See, e.g., Compl. at ¶ F.2 (alleging that plaintiff "put so many [grievances] inside of the I.G.R.C. Box," but received no answers).

that grievances were unavailable to him, or that he was deterred from filing them.   See, e.g., Snyder v. Whittier, 09-1930-pr, 2011 WL 2600478, at *3 (2d Cir. July 1, 2011) (summary order) ("[Petitioner's] assertion that he feared retaliation in the first place . . . is belied by his testimony that he complained . . . within two hours of the assault. . . . Our conclusion is further underscored by the fact that [petitioner] complained to no less than four other individuals about the attack, between the time he disclosed details of the attack to [the officer], and the time when he finally attempted to file a formal grievance."); Harrison v. Goord, 07 Civ. 1806 (HB), 2009 WL 1605770, at *5 (S.D.N.Y. June 9, 2009) (rejecting a claim that remedies were unavailable where petitioner "continued to file grievance after grievance"). Where plaintiff alleges that he submitted numerous grievances, he cannot also contend that he was meaningfully deterred from doing so. In addition, we note that it is not at all clear from plaintiff's submissions that any of the alleged retaliatory conduct occurred during the relevant time period after the April 2009 incident. Plaintiff appears to focus on events at the Attica correctional facility, to which he was transferred on July 10, 2009, three months after the incident at issue.

Plaintiff also argues that administrative remedies were unavailable because his grievances were tampered with, or

intercepted, by correction officers. See, e.g., Affidavit of Rasheen Davis, Sept. 30, 2010 (Dkt. No 29); Letter from Plaintiff to Commissioner Brian Fisher (Feb. 10, 2010). In his complaint, plaintiff claims that he did not receive any response to the grievances he submitted because "these are the strategies they are using [and] had been using for years . . ." Id. Based on other submissions to the Court, it appears that the strategy to which plaintiff refers is one of officers allegedly intercepting grievances submitted by inmates. See, e.g., Letter from Rasheen Davis to the Court (Oct. 25, 2010).

While we take such allegations seriously, there is no evidence that any grievances were actually filed, intercepted, or ignored. Plaintiff has produced a number of letters he sent to a variety of prison officials, and a number of responses from those officials -- thus, some of plaintiff's mail has in fact reached its intended recipients. In addition, plaintiff has submitted one grievance he filed on an unrelated issue. But he has not produced a copy of any of the numerous grievances that he says he filed, nor has he produced a copy of any appeals to the Superintendent or CORC. As noted above, DOCS has no record of any grievances filed at either Sing Sing or Attica relating to the incident at issue, and no record of an appeal filed with CORC. Under such circumstances, there is not a sufficient basis in the record to find that administrative grievances were

unavailable.  <u>See, e.g.</u>, <u>Curry v. Mazzuca</u>, 05 Civ. 1542 (NRB), 2006 WL 250487, at *7 (S.D.N.Y. July 2, 2006) (rejecting plaintiff's claim that he should be excused from satisfying the exhaustion requirement on the grounds that he received no response to his grievance, where "there [was] no evidence whatsoever that such a grievance was actually filed with a grievance clerk or ignored by prison officials grievance"); <u>Veloz v. New York</u>, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004) (holding that without evidence that grievances were filed, and without evidence "that any particular officer thwarted [plaintiff's] attempts to file[,] plaintiff's contention that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost" is unsupported)(internal quotation marks and citation omitted); <u>Nunez v. Goord</u>, 172 F.Supp.2d 417, 429 (S.D.N.Y. 2001) (finding that where defendants submitted evidence that there was no record of a grievance reaching the superintendent, plaintiff's allegations that, <u>inter alia</u>, his grievances were lost or destroyed, "stand alone and [are] unsupported").[9]

---

[9] As noted above, "an inmate's claim is not exhausted until he appeals to CORC and receives a final decision regarding his grievance." <u>Smith</u>, 2011 WL 1483924, at * 3.  Furthermore, "even assuming that [a plaintiff] filed the initial complaints that he claims to have filed, and never received a response, this does not excuse the failure to exhaust his remedies." <u>Harrison</u>, 2009 WL 1505770, at *2.  <u>See also</u> <u>Lashley</u>, 2004 WL 192090, at *2 (stating that "[e]ven where an inmate receives no response to his initial level grievance, he is still required to file an appeal in order to satisfy the exhaustion requirement").  Thus, even if plaintiff had filed timely grievances with the I.G.R.C. and appeals to the superintendent, we are still

## 2. Estoppel

To the extent that plaintiff argues that the defendants intercepted his grievances and thus are estopped from raising the failure to exhaust as a defense, plaintiff has provided no evidence to support his claim that his grievances were intercepted other than his allegation that his grievances were not answered.  A number of courts have found similar allegations insufficient to excuse a failure to exhaust.  See Bennett v. James, 737 F.Supp.2d 219, 226 (S.D.N.Y. 2010) (rejecting claim of estoppel where "[plaintiff] does not provide the Court with any evidence to support a finding that defendants acted to interfere with his ability to exhaust");  Butler v. Martin, 9:07-CV-521 (FJS), 2010 WL980421, at *5 (N.D.N.Y. Mar. 15, 2010) (stating that, "[e]ven if, as alleged, Plaintiff's grievances were discarded, Plaintiff offers no evidence that a particular officer discarded the grievances); Harrison, 2009 WL 1605770, at *7 (finding plaintiff's allegation that his mail was tampered with insufficient to excuse his failure to exhaust, where plaintiff provided no evidence that his mail was ever opened with or tampered, or that defendants even had access to his

left with plaintiff's statement in his November 4, 2010 affidavit that he "just send [sic][the grievances] to Ms. Karen Bellamy [director of the IGP] explaining why I have send [sic] it straight to her office," (Aff. of Rasheen Davis, Nov. 4, 2010).  Here, plaintiff appears to be referencing a September 3, 2010 letter that he sent to Bellamy, who sent a response letter back to plaintiff ten days later.  Even if this correspondence could satisfy the third step of the grievance process, it was sent eight months after the filing of the complaint in this case, and is thus insufficient to satisfy the PLRA's exhaustion requirement.

mail); Winston v. Woodward, 05 Civ. 3385 (RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (finding that defendants were not estopped from asserting failure to exhaust as an affirmative defense where plaintiff did not provide any direct or substantial evidence to support his claim of mail tampering). Furthermore, there is no evidence to support a claim (to the extent that plaintiff makes one) that it was any of the defendants in this case who engaged in the alleged conduct.

### 3. Special Circumstances

The "special circumstances" exception for failure to exhaust has typically been applied "where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." Winston, 2008 WL 2263191, at *10. Indeed, "[a]bsent an allegation by the inmate that his failure to exhaust was based on a reasonable, but erroneous interpretation of prison regulations, the special exception is generally inapplicable." McDowall v. Metropolitan Correction Center, 08 Civ. 8239 (BSJ), 2010 WL 649744, at *7 n.4 (S.D.N.Y. Feb. 22, 2010) (collecting cases). Here, plaintiff has made no claim that special circumstances exist that excuse his non-compliance with official procedural requirements, and we are not aware of any.

## CONCLUSION

For the reasons set forth above, the defendants are granted summary judgment and the complaint is dismissed.

Dated:     New York, New York
           August 26, 2011


                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:


Pro Se Plaintiff:
Rasheen Davis
08-A-0800
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953


Attorney for Defendants:
Susan H. Odessky, Esq.
Office of the Attorney General
State of New York
120 Broadway
New York, NY 10271